UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | ) | |
| LINDSAY CADRIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 12-40112-TSH |
| MONTEREY FINANCIAL SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
August 19, 2013

HILLMAN, District Judge.

**Introduction**

This is a civil action arising out of an unpaid debt from the purchase of jewelry. On December 19, 2012, Plaintiff Lindsay Cadrin ("Cadrin") filed an Amended Complaint against Defendant Monterey Financial Services, Inc. ("Monterey") alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA") for repeatedly "robocalling" Cadrin's cellular phone to demand repayment (Docket No. 5). Monterey filed its Answer on December 27, 2012 (Docket No. 6). On January 7, 2013, Monterey filed a countersuit in Dudley District Court seeking to recoup the underlying debt of $3,670.90 (Docket No. 12-1). On January 25, 2013, the parties, outside the presence of counsel, executed a global settlement terminating their federal and state suits (Docket No. 11-2). Now before the Court is Monterey's Motion for Summary Judgment seeking to enforce that settlement agreement and dismissing the Amended Complaint (Docket No. 8). The Court took the present matter under advisement after holding a

motion hearing on May 30, 2013 (Docket No. 19). Accordingly, for the reasons set forth below, I hereby GRANT Monterey's Motion for Summary Judgment.

## Background

The basic facts underlying the present matter are not in dispute. After Cadrin sued Monterey in federal court for violations under the TCPA, Monterey then sued Cadrin in Dudley District Court to recoup a $3,670.90 debt from a jewelry purchase. On January 18, 2013, Cadrin was served with a Summons and Complaint for the state court action. Shortly thereafter, Cadrin called Monterey and left several messages requesting that someone from Monterey call her back.

On January 25, 2013, Cadrin spoke with the Monterey's President, Christopher Hughes ("Hughes"), by telephone. During the call, Cadrin and Hughes agreed to a global settlement of both suits. Cadrin indicated that she wanted the litigation behind her because of the potential negative consequences protracted litigation would have on her credit rating. Specifically, under the terms of the agreement Monterey would discontinue its state civil suit in exchange for Cadrin discontinuing the federal TCPA action and remitting $1,000 to Monterey. Hughes informed Cadrin that she would have to contact her attorney in order to dismiss the TCPA action. Although Cadrin informed her attorney of her desires to settle, her requests went unheeded. Nevertheless, Cadrin continued negotiations with Hughes.

One of the concerns Cadrin had during negotiations, which she expressed to Hughes, was whether she would owe attorneys' fees for the TCPA action. Although Hughes stated his assumption that Cadrin would likely not owe fees, he explicitly informed her that he was not an attorney, had no knowledge of her specific agreement with her counsel, and was not qualified to give any legal advice.

Without the assistance of counsel for either party, Hughes drafted and faxed the settlement agreement to Cadrin's place of work where she executed it and faxed it back to Hughes. Hughes then executed the settlement agreement on behalf of Monterey. Later that afternoon, Cadrin's mother contacted Hughes and paid the $1,000 owed under the terms of settlement on behalf of her daughter. Although Cadrin agreed to dismiss her TCPA action against Monterey within five days of executing the settlement, at present, she has not done so.

## Standard of Review

Summary judgment is a dispositive motion used "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991). The moving party carries the initial burden of directing the court to specific pleadings, affidavits or discovery in order to demonstrate "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Sensing v. Outback Steakhouse of Fla., LLC*, 575 F.3d 145, 152 (1st Cir. 2009). A dispute is "genuine" when there is "sufficient evidence to permit a reasonable trier of fact to resolve the issue in the nonmovant's favor." *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 684 (1st Cir. 1994). Furthermore, a fact is "material" if it "has the potential to alter the outcome of the suit under the governing law if the controversy over it is resolved satisfactorily to the nonmovant." *Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir. 1996).

"Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002). The court must view the evidence in a "light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Navarro v. Pfizer Corp.*, 261 F.3d 90, 94 (1st Cir.

2001) (quoting *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990)). Thus, conflicting evidence in the record "favor[ing] in some lights the defendant[] and in others the plaintiff" is best left for a jury "to determine which version of the facts is most compelling." *Sensing*, 575 F.3d at 153 (citing *Calero-Cerezo*, 355 F.3d at 19).

## Discussion

Monterey asserts that summary judgment is appropriate in this matter because Cadrin freely negotiated and knowingly entered into a valid settlement agreement. Cadrin, however, alleges that this agreement was born from Monterey's fraudulent actions and executed while Cadrin was under duress. As there are no genuine disputes of material fact, I find Monterey's position more persuasive.

"It is well established in Massachusetts that the essential elements of a contract are an offer, acceptance, and [a mutual] exchange of consideration." *Vadnais v. NSK Steering Sys. Am., Inc.,* 675 F. Supp. 2d 205, 207 (D. Mass. 2009). For a valid contract to be binding, the parties must mutually assent to all terms contained therein. *See Bistany v. PNC Bank,* 585 F. Supp. 2d 179, 182 (D. Mass 2008). The parties created a valid contract. Cadrin accepted an offer to settle whereby she would pay Monterey $1,000 and dismiss her TCPA action in exchange for Monterey terminating its debt collection suit against her in state court. Specifically, Paragraph One of the agreement states that Monterey and Cadrin are mutually releasing one another from any and all claims. Both parties understood and assented to these terms. Cadrin's assent is evidenced by conveying her understanding of the terms with Hughes, executing the agreement, and having her own mother pay the $1,000 owed that same day. Therefore, the global settlement meets the elements of a valid contract and is binding on both parties.

Cadrin argues that she executed the settlement agreement under duress. Under Massachusetts law, a party alleging that a contract is void because it was executed under duress must prove that: "(1) [she] has been the victim of some unlawful or wrongful act or threat; (2) the act or threat deprived [her] of [her] free or unfettered will; and (3) due to the first two factors, [she] was compelled to make a disproportionate exchange of values." *Happ v. Corning, Inc.*, 466 F.3d 41, 44 (1st Cir. 2006). Here, Monterey neither threatened nor acted unlawfully in negotiating a settlement between the parties in response to Cadrin's overtures. Cadrin entered into the agreement of her own volition and ultimately paid several thousand dollars less than the original debt. Furthermore, Monterey is located in California, while Cadrin lives and works in Massachusetts. Monterey faxed the settlement agreement to Cadrin's place of work in Massachusetts without a set deadline for her to execute the agreement. Cadrin had time to think about the agreement and the ramifications of signing it as well as call her attorney before faxing it back to Monterey. In addition, the language of the settlement explicitly states that Cadrin was executing the agreement voluntarily and without any duress. Her actions in executing the agreement therefore were the product of her free will and desire to end all pending litigation. Thus, Cadrin was not under duress when she executed the settlement agreement with Monterey.

Cadrin also argues that the settlement agreement is void because Monterey violated 940 CMR § 7.04(2). This rule is inapposite to the present dispute. 940 CMR § 7.04(2) prevents a first-party debt collector from contacting a debtor once the debtor's attorney informs the collector that all future communications regarding said debt should be brought to the attorney first. Regardless of whether Cadrin's counsel notified Monterey in the federal matter, Cadrin's counsel has presented no evidence demonstrating that he represented her in the state matter. Furthermore, it was Cadrin who initiated contact with Monterey; counsel for either side was

never involved in negotiations. "[T]he decision to settle litigation [*always*] belongs to the client, not the lawyer." *Malave v. Carney Hosp.*, 170 F.3d 217, 221 (1st Cir. 1999). A fundamental tenet of our legal system allows litigants to communicate with one another directly in order to amicably resolve their disputes. MASS. RULES OF PROF'L CONDUCT 4.2 cmt. 1. Here is no exception. Thus, Monterey has not violated 940 CMR § 7.04(2).

<u>Conclusion</u>

Accordingly, for the reasons set forth above, Monterey's Motion for Summary Judgment is hereby GRANTED. All remaining actions are hereby DISMISSED in accordance with the parties' settlement agreement.


It is so ORDERED.


*/s/ Timothy S. Hillman*_____
TIMOTHY S. HILLMAN
UNITED STATES DISTRICT JUDGE